Good morning, Your Honors. Tariq Adlai for Appellant Eric Saldivar. The key to the juror's decision in this case, as the prosecutor argued during summation, was why? Why did this happen? Why was De La Rosa shot, and how did it come to pass? And although there are two other issues worthy of this Court's attention, I was going to focus my time on the two issues relating to the self-defense claim, and on each of these two questions, how and why the trial judge prevented the jurors from applying their constitutional role in their independent judgment. Alito Help me with something on that. Sotomayor Yes. Alito You'd certainly be entitled to an instruction if there were, let's see, under the standards of some places, some evidence, and I think the California standard is substantial evidence. Sotomayor Correct, Your Honor. Alito Even if I take the story most favorably to Saldivar, what happened is De La Rosa attacked him, tried to shoot him. Sotomayor Right. Alito He got the gun away from De La Rosa. Sotomayor Yes. Alito De La Rosa tried to run away, and Saldivar shot him twice in the back. I don't see what you have in the way of evidence that would entitle the defense to an instruction. Sotomayor So there was a little gap there. Saldivar got the gun away, and Your Honor said, and then he turned to run away. Sequentially, you're assuming that Saldivar's shot was sequential, and we don't know that. Alito Well, you can't fire two shots at the same time. Sotomayor Correct. Alito There's a time between them, and it wasn't a machine gun. Sotomayor Correct. But what we – I submitted a couple of 28-J letters recently coming up with some scientific and academic studies, but they really tell you what I think is the obvious, and that is that where the bullets entered tells you where De La Rosa was facing after the gun was fired. It doesn't tell you in what direction he was facing the moment before. Alito It's not very long. I mean, about the slowest bullets you can get, if you load your own on a .44 Magnum, go maybe 800 feet per second. So you're talking about a tiny fraction of a second, and assuming it's a smaller caliber, which I think it was, it's much faster than that. Sotomayor I understand, Your Honor, but if you look at the studies, they actually Alito It's like the time the shutter is open on a camera. The studies actually show that the time it takes for a person to turn around is shorter than it takes for a decision to shoot to be carried out, for the brain to act on that decision, and for the motor reactions to take place. And the studies also show that the brain, once the brain makes a decision, not only does it take time to carry that out, but if the situation changes, it takes time to respond to the changed circumstances. And what I think is also interesting Alito I could see the relevance of that if what the defense had asked for was a manslaughter instruction. I didn't mean to fire twice, it's just that once the sequence started, it takes time to stop it. Sotomayor Actually, Your Honor, the studies show that in the time it takes to respond to the changed circumstances, a person, a trained police officer who's trained to have quick reactions, can still fire two more shots. Alito So what is the, what do you say is the evidence of self-defense here? You're telling an interesting story, and maybe theoretically it's possible, but I don't see in the record where it's supported by any evidence that there was actually something going on here with self-defense. He was shot in the back. We know that. He was shot in the back twice because we know where the bullets entered. And other than saying, well, it could have been, could have been, what evidence do you point to that suggests that the judge got it wrong when he said it just isn't enough there for self-defense instruction? A bat on the ground, what? Sotomayor Let me also add one other aspect about the bullet wounds, and that one of them is in the lower left back, and the next is in the upper right back. And that is consistent, that is consistent with someone turning around while the person with the gun's arm is being raised. That would be consistent with, very consistent with the struggle over the gun and immediate  But let me Oh. Ginsburg To back up, though, I'm having a problem. You know, we're talking about the facts, but aren't we, given that this is a habeas  decision of the State court, bound were the facts, and that's, some of the facts that you're raising now are not facts that that court considered. And that is exactly the problem. I'm, because we're only bound by facts when they're, they're reasonably determined, they're not unreasonably determined by the record. And one of the critical facts that the State appellate court did, was it, it took the facts in the light most favorable to the judgment, and said that the shots were fired as de la Rosa was running down the street. But what does Zamora say? Zamora says, no, they were facing each other when the shepherds That's the witness? Correct. The witness who said they were facing each other. The only eyewitness. But didn't he change his testimony right after he said that? He said something different? He did respond, he did say that de la Rosa turned and ran away, and he did respond to a leading question. So you're saying he was run away as he was being shot. I think that if you want to seize on the evidence favoring the judgment, yes, that is evidence supporting it, but there's contrary to that. Isn't that what the, when you make a sufficiency challenge, isn't that what the State court is supposed to do? In the, there was no sufficiency challenge raised in this case. I don't think it's exactly a sufficiency of evidence. I think it's whether there was a reasonable basis in the evidence for the State court's determination of fact. Correct. And that would, why wouldn't that be a reasonable basis? Well, Your Honor, one of the things that the State court said. The only thing you've got is Zamora, Zamora's first remark, and then he immediately rescinds it. He doesn't, I don't, well, I don't believe he rescinded it, Your Honor. All it needs is a permissive reading by the State court that he immediately rescinded it. In order to require us to defer under 2254d. I'm sorry. In order for us to be required to defer under 2254d, all they need is a reasonable basis to think that he just rescinded it. No, Your Honor, because they have to read the facts in the light most favorable to the defense. Bradley tells us that. Bradley 315f3rd, which is cited in my briefs. The facts must be interpreted in the light most favorable to the defendants when we're talking about a self-defense, when we're talking about a theory of defense instruction. That's the only fact you have, isn't it? I mean, that's straw Mr. Zimora's very fleeting testimony, followed immediately by a more detailed clarification of that. If you're looking for self-defense evidence, that's all you've got, isn't it? What else have you got? No, Your Honor. Your Honor, I think the clearest evidence of self-defense is that Saldivar himself was the victim of a shooting. An initial shot, a moderately lengthy pause, and Saldivar walks away with an injury to the hand that Dr. Krenkel, the coroner, says, yes, that's consistent with an injury. And he's got a fresh – it's a fresh wound. But it's not – he nowhere says it's consistent with him having been grazed by a bullet. Not grazed by a bullet, but being in the presence of powder and gas burns from – so it's consistent with him pulling on the muzzle with his left hand as the gun is discharged, and it's consistent with him being struck by the hand – the sight on the gun. But there are three general sets of circumstances, one of which the defense lawyer argued that this was a setup by the – by the law enforcement all along. There was evidence to support that. The jury's been – Kennedy, I mean, the – Well, that's not necessarily true, Your Honor. Under the instructions – Mm-hmm. Under the instructions and with the trial judge's factual instruction that there was no struggle, there was no legal defense. If – once they – Why would it even matter? I mean, let's just suppose that the policeman did tell – Yes. I think it was De La Rosa that Saldivar was going to shoot him because he was a snitch, or – did I say it backwards? Well, he was a child molester and sexual offender, and that – as well as being an informer. That is correct. But why does that – Let's say the jury believes that. Still, once Saldivar has the gun, and there's no evidence that De La Rosa has a gun, how do you get self-defense out of that, especially once they're separated by more space than – There's no indication they're separated by any space. They could have been as close – There is no powder burns on De La Rosa. At least two feet, they were separated by at least – Two feet is mighty close, Your Honor. Mm-hmm. It's closer than the Attorney General is to me right now. I understand. That is very close proximity. And they are still struggling. It is a fresh – a wound – I'm sorry, a struggle that happens immediately. The separate – in order for Zamora's to see him run, you can only see him run for a fraction of a second. The very first drop of blood, where the blood spatter is, is on the corner. It's right on the corner, which is right where Saldivar would have been turning, which is another factor. What you're saying now seems to me like a really good closing argument with the limited evidence you have. But I can't see how we can take what you're saying right now as demonstrating less than a substantial basis in fact under 2254D for the state court determination. I mean, it's a speculation. It could be a correct speculation. But I just don't see more than that. Okay. Your Honor, there's also – You have any more than Zamora, the kid that – Doctor – and also the – well, also the location. The doctor is not helpful to you because he could scrape his hand on the sidewalk. But how does the gun get – It doesn't really matter even if a shot grazed him because once he's got the gun, he's out of danger. At a moment's notice, he's got no – human beings take time to react, Your Honor. The brain is a – I think the California case you cited – Hmm? I think the California case you cited, I may be confusing them, but I think it said you're entitled to a manslaughter instruction in that circumstance rather than a self-defense instruction. I'm not sure which case Your Honor is talking about. So, no. I did say that even that the California courts did not consider prejudice in the context of a manslaughter instruction or even second degree. But, no, he was entitled to self-defense. Counsel, but, see, I still don't understand how – what you're saying that the California Court of Appeal did objectively and reasonably. Well, they got the facts. No, they say there was a confrontation and there was a struggle and that Saldivar grabbed the victim's gun and it discharged, wounding Saldivar's hand. They mention everything you just mentioned in their opinion. And then they say – they cite the correct law. They say the instruction has to be supported by substantial evidence. This doesn't mean that any evidence. And then they say that there's no evidence that the defendant withdrew from the fight and communicated this intention to the victim. And they rely on the fact that when Saldivar shot the victim in the back, the victim was running away from Saldivar. And that is wrong. So he got the gun. No, I agree with you. From the evidence, he got the gun. There was – de la Rosa had the gun. Saldivar grabbed the gun. And he got the gun. But he didn't run away. He didn't retreat from the battle at that point. And he grabbed it by the muzzle, right? He would have had to turn the gun around. And by that time, de la Rosa was running away. The first – Once he lost his gun, he wasn't going to stick around for the fight. Your Honor, the first blood spot is right at the corner. It's on the pavement, right at the corner, which is right where Saldivar would have been walking. So that indicates that the shot happened right there, that moment. They struggled, and right there, that moment. And there's also the fact that what is Saldivar – what is de la Rosa doing there? He's been told to stay out. Oh, I think there very well could be a scenario where de la Rosa was planning to attack Saldivar, but that didn't – that scenario didn't actually play out. The other – Your Honor, my time's running short. Keep going. Yeah, keep making your argument. Okay. Your Honor, there – I think there are three aspects. One is, I don't think the State court even adjudicated the Federal claim here. Why? Because there's no – and they don't have to reference Constitution, but they didn't. They didn't cite any Federal cases. They didn't mention the Constitution. They didn't mention any enumerated rights. They cited – I think the Supreme Court has told us that doesn't matter. You still have to show it's contrary to a holding of the Supreme Court. And we're supposed to assume that the State court was aware of all the Supreme Court law on the subject. Presume, but it's a rebuttable presumption. And they say that if the State court does, in fact, only rely on State law, then, in fact, it's not adjudicated on the – the Federal claim's not adjudicated on the merits. And in this case – It doesn't matter. It still has to be contrary to a holding of the Supreme Court. And – and the Federal law here is that any evidence, any evidence is sufficient. That's why I raised the distinction between some and substantial. Right. I don't see some. Some is enough. It doesn't have to be – I don't see the some here. Okay. There were – there were three general sets of circumstances. And – and I guess what I see is that there was evidence that it was a setup. Like I said, there was evidence that there was an ambush. And then there's the evidence that it happens right at the corner and that the second – that the second set of shots are instantaneous. There's a significant pause, and the two shots are rapid fire. They're immediate. And Trenkle says, as Judge Ponser said, they could be as close as two feet apart. They could be about six feet apart. Well, no less than two feet. I don't think we know anything else. Correct. Correct. And if you read the light in the light most favorable to the defendant, they're facing each other. And the first drop of blood is on the pavement, right at the sidewalk. And that's on the sidewalk corner, which is right where Saldivar would have been turning to go up north, which is very consistent with the ambush theory. And it's also the same place where the beer can is dropped. It's the same place where de la Rosa's hat is knocked off. And it's also the same place where there's fresh, smoldering cigarettes that are consistent with someone waiting around and hanging out, waiting for their prey to show up. And I'd also like to note that de la Rosa is active and spry and running down the street, right? But no more gunshots are fired. Even though he's got a gun. Active and spry is a little tough when you're heavily bleeding from the two gunshots in your upper body. As they said, he was bleeding like a faucet by the time the officer got there. By the time they got there. But they said. Spry? Oh, it sounded, as I read the record, he was running. He was running at a quick pace. He was trying to run until he fell. He fell. He stumbled is their first word is that he stumbled. Counselor, you're well over your time. Thank you very much. May it please the court. Vincent LaPietra, Deputy Attorney General, on behalf of respondent. The district court properly denied relief here. The state court reasonably determined that the proffered evidence was insufficient to on self-defense. The mere existence of a struggle at some point does not establish an honest and reasonable belief in the need to protect yourself from imminent harm. Here, the only evidence presented was a cut on Saldivar's hand. What are your thoughts on whether we should apply? In applying our deference to the state court decision, whether we should be looking at the evidence standard or the substantial evidence standard of California law. Your Honor, the district court correctly noted in footnote three of the original report recommendation, which is incorporated in the brackets of the second report recommendation, that the some evidence standard clearly does not apply because that is governing federal courts under the supervisory powers and not clearly established constitutional law. The substantial evidence standard is the applicable standard. As the court has noted, the evidence here established that the victim, De La Rosa, was shot twice in the back as he was running away. Again, the district court noted that in its footnote four of the original report recommendation, which cites the testimony directly stating that De La Rosa was running away from Saldivar and was shot twice in the back from a distance of six feet. Are you saying that you'd be in trouble if we used the some evidence standard rather than the substantial evidence standard? Is that a difficulty for you here? Is there some evidence from your point of view? Well, respectfully, Your Honor, we would not be in trouble if the court used that standard, although it is not applicable. There is no evidence of self-defense here. As I stated, the only evidence cited is a cut on Saldivar's hand. Now, while the medical witness said it was consistent or could have been consistent with grabbing the barrel of a gun, I believe one of the police officers testified that he thought the cut came during the arrest. Whose gun was it? I'm sorry, Your Honor? Whose gun was it? We don't know, Your Honor. We just know that Saldivar threw it from his moving car as he was driving away. Again, and that brings me to a point that we should consider. Defendant's entire theory of the case fails to consider the fact that he shot De La Rosa while standing next to an idling getaway car with a getaway driver who was convicted as a co-defendant on an aiding and abetting theory. And so immediately after shooting De La Rosa, he got in the getaway car and they fled the police. Let me nudge you into an area that your brother counsel didn't address, which is the claim of appeal. The judges indicating there was no evidence of struggle, objections sustained, and then allowing, apparently, defense counsel to go on with an argument with regard to that. Did the judge butt in there and cut off any argument with regard to struggle improperly? Well, no, Your Honor. The state court reasonably determined that that comment did not constitute a federal constitutional error by their finding no prejudicial error. Such a claim without a clearly established rule from the United States Supreme Court is premised solely on a general due process claim, which means that the comment must have rendered the trial fundamentally unfair. And the state court reasonably determined that that did not happen. Most importantly, the trial court qualified its statement by saying, at this time. As you noted, he later allowed defense counsel to argue the existence of a struggle. But what good was that when he wouldn't allow the instruction on self-defense? Exactly, Your Honor. There was no reason to argue it because the self-defense instruction was properly denied. Yeah, but he permitted. It seems inconsistent that he permitted. In the end, he permitted defense counsel to argue that there was a struggle. But what the struggle went to was the theory of self-defense. And so that seems inconsistent. It does seem inconsistent, Your Honor. And from a practitioner's point of view, it's hard to determine what exactly the trial court was thinking. But from the jury's point of view, what they saw was an objection sustained with the qualifying there's no evidence of a struggle at this time. And then a similar argument made not too long thereafter, which was overruled, and the court said, go ahead. I can see what he's thinking. He's thinking, well, I already told them defense counsel was irrepressible. Prosecution gets a rebuttal argument, and they can deal with it. Over generous to the defense, perhaps.  Probably, Your Honor. But by saying that there wasn't a struggle, weren't they removing a jury question from the jury? Wasn't the trial judge removing a jury question from the jury in violation of the Sixth Amendment? No, Your Honor. As I was saying, by qualifying the first objection sustainment, by saying at this time, and overruling the second objection, what the jury saw was there was some problem at defense counsel was permitted to argue. I don't understand how it could be corrected. If you say there's no evidence at this time, and the presentation of evidence is closed, or in final arguments, there's not going to be any evidence. Well, yes, Your Honor. From a practitioner's point of view, yes, there is no further evidence. Counsel statements are not evidence. It seems reasonable to... Words at this time just seem like extra words. From a jury's point of view, I would argue that that means at this time in your argument, you haven't pointed out any evidence that was presented that establishes a struggle. There's apparently a per curiam opinion vote in the Supreme Court that came down about two hours ago, reversing a Ninth Circuit decision in Frost on the point of whether we use harmless error analysis or structural analysis in determining whether a judge's interruption of closing argument was improper. And unfortunately, the Supreme Court reversed the Ninth Circuit about two hours ago and held that it is subject to harmless error analysis and is not structural. Assuming the judge made a mistake in that ruling, would that be harmless under the circumstances here? Sorry to play law school with you and catch you off guard here, but what would the harmless error analysis be under those circumstances? I think the case is called Frost. Yes, Your Honor. That's entirely in line with what I was arguing in that by allowing defense counsel to argue the existence of a struggle at length, any possible error was removed. And that's exactly what the State Court of Appeal found and reasonably determined that there was no constitutional error here. Unless there are any further questions. I just found the whole thing, the whole scenario odd because the police were there and they heard the gunshots. How come all the police involved in this were there when this event took place? I don't know, Your Honor. Heard gunshots? I'm not from this town, but it sounded like the police were nearby and heard the shots and proceeded to the location. I believe they were... It's not that small a town. Well, I believe they were parole agents, weren't they? They're following these guys around, seeing which one was going to shoot who? Well, I don't know what parole agents do on a daily basis, Your Honor. Maybe this is one of those occasions when there really is a police officer around when you need one. Yes, Your Honor. All right. Thank you, counsel. Thank you, Your Honor. All right. The case of Saldivar v. Lewis will be... I'll give you a short rebuttal since... I appreciate that. Yeah. Okay. There were a couple of issues.  by Bradley, by this Court in Bradley. There are three grounds on which I argue that 2254d does not apply if there was no adjudication of the Federal claim, and we have strong arguments that there wasn't an adjudication of either of the two Federal claims I talked about. With regard to the cutting off of the judge's factual instruction that there was, quote, no evidence, the Court is correct. He just took away the entire question. There was nothing for the jury to do anymore. The judge didn't comment, I don't believe it, I have my own doubts, but it's free to you. He said there is no evidence. And I do believe, as Judge Kleinfeld commented, it probably was just, he's at it again, I don't care. Just let the prosecution deal with it. And so what's the jury going to take away from that? There's no evidence. They can't consider whether there'd been a struggle. And Judge Wardlaw's question about, yes, that's a lot of police officers. You'd be showing up immediately. And Duarte, Agent Duarte, the one who, as the defense lawyer said, planted the evil seed of hate. I think that goes to self-defense, and that Saldivar was surprised. But in any event, self-defense requires a reasonable response. It doesn't require absolute perfection. It doesn't require immediate reaction. It's just acting reasonably under the circumstances. And reasonable? Reasonable is a jury question. And I am aware of the Frost decision from this morning, Your Honor. I didn't expect to address every one of the judges by name in my rebuttal. But I am familiar with the Frost decision. And that's a very different kind of case, because what was involved in Frost was a herring question where the defense lawyer was foreclosed from arguing one of two different cases that the Supreme Court had granted relief of the other. Yes. But what this case involves, and why Frost doesn't control this case, and why this still is structural error, is in this case, in Frost, the jury was still. I'm sorry? You're saying this case is not only error, but structural error? There is case law supporting that both. Every time the Ninth Circuit says something structural error, it gets reversed. We get reversed. And the Supreme Court says, every time. No, we told you virtually everything except denial of counsel. In Powell. To see whether you call it trial error and see if it's harmless. Okay. In Powell v. Glaza, this Court found that the factual instruction issue that I'm raising is structural error.  So I think that is enough to establish the prejudice from it. On the self-defense, on the defense instructions, there is a, there is. Incidentally, I don't see why it's error at all. It looks to me like the judge had just sustained an objection to closing argument, which is a little unusual, and he was explaining why. Well, there's a factual issue. And just what I was going to say is in Frost, the jury was still allowed to make all the decisions, all the factual decisions. He didn't instruct the jury that you can't consider whether there's evidence of self-defense because he didn't give them a self-defense instruction to consider it in connection to it. That is correct. And that's really all we have to evaluate, I think. But he also said there is no struggle. So when you find, when you, the jurors, go back, self-defense, it relieved the prosecution. I remember him using the words, there's no struggle. Did he? I'm sorry? Did he say there's no struggle? I don't recall that. He said, quote, there is no evidence of a struggle. There is no. At this time. He did add at this time. I also believe that was just throat-clearing language. The trial was over. All the evidence had been submitted. My assumption was he was talking about at that point in counsel's argument. He hadn't pulled together the evidence of a struggle. And counsel went on to argue that there was a struggle and was never interrupted by the judge. There was never an objection by the prosecutor. But without an instruction on self-defense, what's the jury to do? Well, that's Judge Wardlaw's point. What's the jury to do if there's no struggle and there's no self-defense? And self-defense, unlike Bradley, which involved entrapment, homicide or murder in California requires the State to prove that the homicide was unlawful. And self-defense, according to the California Supreme Court, goes directly to that element of the offense, that it was not unlawful. And that was people of the Elmore, which I think I cited. So. All right, counsel. Thank you very much. We will now submit Sal DeBar. Thank you, Your Honor. Lewis. Thank you.
judges: Ponsor, Kleinfeld, Wardlaw